```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____          │
│ DATE FILED:  7/22/2021           │
└─────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Jose Pareja, individually and on behalf of all others similarly situated,**

                                                    **Plaintiff,**

                    -against-

**184 Food Corp. et al.,**

                                                    **Defendants.**

1:18-cv-05887 (JPO) (SDA)

<u>ORDER AND REPORT AND</u>
<u>RECOMMENDATION</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE J. PAUL OETKEN, UNITED STATES DISTRICT JUDGE:**

Before the Court is an application, pursuant to Federal Rule of Civil Procedure 55(b)(2), by Plaintiff Jose Pareja ("Plaintiff" or "Pareja") for entry of a default judgment against Defendants 184 Food Corp., 231 Food Corp., DG 231 Food Corp., 0113 Food Corp., 640 Pelham Food Corp., G&G Pelham Food Corp., Rafael Montes Deoca, Rafael Montes Deoca Jr., Giovanni Marte, Jose Marte, Gustavo Marte and Gregory Gonzalez (collectively, "Defendants"). (5/18/2021 Mot. for Default J., ECF No. 262.) For the reasons set forth below, it is hereby Ordered that Plaintiff's motion is GRANTED with respect to Defendants 0113 Food Corp., Giovanni Marte, Jose Marte and Gustavo Marte, which are the Defendants that appeared in this action and consented to my jurisdiction (the "Appearing Defendants"). In addition, I respectfully recommend that Plaintiff's motion be GRANTED with respect to Defendants 184 Food Corp., 231 Food Corp., DG 231 Food Corp., 640 Pelham Food Corp., G&G Pelham Food Corp., Rafael Montes Deoca, Rafael Montes

Deoca Jr. and Gregory Gonzalez, which are the Defendants that never appeared in this action (the "Non-Appearing Defendants").[1]

## BACKGROUND

**I.      Established Facts As A Result Of Defendants' Default[2]**

Defendants 184 Food Corp., 231 Food Corp., DG 231 Food Corp., 0113 Food Corp., Rafael Montes Deoca, Rafael Montes Deoca Jr., Giovanni Marte, Jose Marte and Gustavo Marte own, operate or control a supermarket located at 184 West 231st Street Bronx, New York 10463 under the name "Bravo Supermarket," which formerly was known as "Pioneer Supermarket."[3] (Second Am. Compl. ("SAC"), ECF No. 123, ¶ 2.) Defendants 184 Food Corp., 231 Food Corp., DG 231 Food Corp. and 0113 Food Corp. are New York corporations with their principal places of business at 184 West 231st Street Bronx, New York 10463. (*Id.* ¶¶ 20-23.) Defendants Rafael Montes Deoca, Rafael Montes Deoca Jr., Giovanni Marte, Jose Marte and Gustavo Marte (together with Defendant Gregory Gonzalez, the "Individual Defendants") are the owners, officers and/or agents

---

[1] Since Plaintiff and the Appearing Defendants consented to my jurisdiction over this case pursuant to 28 U.S.C. § 636(c) (*see* Consent, ECF No. 220), I hereby am ordering that Plaintiff be granted a default judgment against the Appearing Defendants as set forth herein. However, the decision on Plaintiff's motion for default against the Non-Appearing Defendants is in the form of a Report and Recommendation because those Defendants have not consented to my jurisdiction. *See Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11-CV-05980 (RA) (JLC), 2013 WL 5977440, at *3 (S.D.N.Y. Nov. 12, 2013), *report and recommendation adopted*, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014).

[2] In light of Defendants' default, the Court is required to accept all of Plaintiff's allegations as true, except for those pertaining to damages. *See, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

[3] Defendants Giovanni Marte, Jose Marte and Gustavo Marte, through Defendant 0113 Food Corp., purchased Bravo Supermarket from 184 Food Corp., 231 Food Corp., DG 231 Food Corp., Rafael Montes Deoca and Rafael Montes Deoca Jr. in or about June 2018. (SAC ¶ 32.) After the purchase there was a substantial continuity in the business operations of the supermarket because the new owners used the same location, work force and supervisory personnel as were used by the prior owners; the same jobs that existed under the prior owners existed under the same working conditions under the new owners; the new owners use the same equipment as was used by prior owners; and the new owners sold the same products as were sold by the prior owners. (*See id.* ¶ 33.)

of Defendants 184 Food Corp., 231 Food Corp., DG 231 Food Corp. and 0113 Food Corp. (*Id*. ¶¶ 26-30.) Defendant Gregory Gonzalez also is an owner, officer and/or agent of Defendant DG 231 Food Corp. (*Id*. ¶ 31.)

Defendants 640 Pelham Food Corp., DG 231 Food Corp., G&G Pelham Food Corp., Rafael Montes Deoca and Gregory Gonzalez own, operate or control another supermarket located at 640 Pelham Parkway South, Bronx, New York 10462 under the name "C-Town," which formerly was known as "Green Apple." (SAC ¶ 3.) 640 Pelham Food Corp. and G&G Pelham Food Corp. are New York corporations each with their principal place of business at 640 Pelham Parkway South, Bronx, New York 10462. (*Id*. ¶¶ 24-25.) Defendants Rafael Montes Deoca and Gregory Gonzalez are the owners, officers and/or agents of 640 Pelham Food Corp. and G&G Pelham Food Corp. (*Id*. ¶¶ 26, 31.)

Pareja was employed by the Defendants at C-Town from approximately February 2015 until February 2017 and then at Bravo Supermarket from approximately February 2017 until on or about June 23, 2018. (SAC ¶ 16.) The Individual Defendants determined the wages and compensation of employees, including Pareja; established schedules; maintained employee records; and had authority to hire and fire employees. (*Id*. ¶¶ 26-31.)

Pareja commenced working for the Defendants in February 2015 as a fruit stocker and his employment continued in this capacity until on or about June 23, 2018. (SAC ¶¶ 49-50.) Throughout his employment with Defendants, Pareja regularly worked more than forty hours per week. (*Id*. ¶ 53.) During the period February 2015 through February 2017, Pareja worked at C-Town from approximately 7:00 a.m. until between 5:00 p.m. and 6:00 p.m., four days a week, and from approximately 4:00 a.m. until between 5:00 p.m. and 6:00 p.m., two days per week.

(*Id*. ¶ 54.) During the period from approximately February 2017 until on or about June 23, 2018, Pareja worked as a fruit stocker at Bravo Supermarket from approximately 7:00 a.m. until between 3:00 p.m. and 4:00 p.m. six days a week. (*Id*. ¶ 55.)

From approximately February 2015 until February 2017, Pareja's wages were fixed at $550 per week. (SAC ¶ 57.) From approximately February 2017 until on or about June 23, 2018, Pareja's wages were fixed at $600 per week. (*Id*. ¶ 58.) Pareja's pay did not vary, even though he regularly was required to work extra hours. (*Id*. ¶¶ 59-60.) Defendants did not grant Pareja any breaks or meal periods. (*Id*. ¶ 61.) Defendants did not use any time keeping system and Pareja was not required to keep track of his time, though to get paid he was required to sign a document falsely stating the hours he worked per week. (*Id*. ¶¶ 62-63.) Plaintiff was not provided with any notification regarding overtime and wages under the Fair Labor Standards Act ("FLSA") or the New York Labor Law ("NYLL") and was not provided an accurate statement of wages under the NYLL. (*Id*. ¶¶ 64-65.)

## II.   <u>Procedural History</u>

Plaintiff initiated this action on June 29, 2018. (Compl., ECF No. 1.) He filed an Amended Complaint on October 31, 2018 and a Second Amended Complaint on January 28, 2019. (Am. Compl., ECF No. 46; SAC, ECF No. 123.) Service upon Defendants was completed between February 6 and 16, 2019. (*See* Affs. of Service, ECF Nos. 148 to 159.) On March 20, 2019, after none of the Defendants entered an appearance or responded to the operative pleading within the allotted time, Plaintiff secured Certificates of Default against each Defendant. (*See* Certificates of Default, ECF Nos. 177 to 188.) Plaintiff filed a motion for default judgment on March 21, 2019. (3/21/2019 Mot. for Default J., ECF No. 190.) On April 30, 2019, the Appearing

Defendants (*i.e.*, 0113 Food Corp., Giovanni Marte, Jose Marte and Gustavo Marte) filed a belated Answer, and on June 11, 2019 filed a motion to set aside the judgment, which District Judge Oetken granted on July 3, 2019. (Answer, ECF No. 195; Mot. to Set Aside J., ECF No. 197; 7/3/2019 Order, ECF No. 198.)

On January 17, 2020, Plaintiff and the Appearing Defendants consented to proceed before the undersigned for all purposes. (*See* Consent; *see also* 4/27/2021 Order, ECF No. 258.) Following discovery, the Appearing Defendants reached a settlement in principle. (9/24/2020 Letter, ECF No. 235.) The Court directed Plaintiff and the Appearing Defendants to file a motion for settlement approval and directed Plaintiff to renew any motion for default judgment against the Non-Appearing Defendants (*i.e.*, 184 Food Corp., 231 Food Corp., DG 231 Food Corp., 640 Pelham Food Corp., G&G Pelham Food Corp., Rafael Montes Deoca, Rafael Montes Deoca Jr. and Gregory Gonzalez). (9/29/2020 Order, ECF No. 237; 11/10/2020 Order, ECF No. 238.) Plaintiff filed both motions on November 17, 2020. (*See* Settlement Agreement, ECF No. 239; 11/17/2020 Mot. for Default J., ECF No. 240.)

On November 18, 2020, the Court preliminarily approved the proposed settlement agreement (which had not yet been signed by the Appearing Defendants) and set a deadline for the parties to file a stipulation of dismissal attaching the fully executed copy of the agreement. (11/18/2020 Order, ECF No. 243.) After the parties failed to file the stipulation, despite one extension of time, the Court ordered counsel for the Appearing Defendants to either file the anticipated stipulation or file a motion to withdraw as counsel. (2/2/2021 Order, ECF No. 248.) On February 9, 2021, counsel for the Appearing Defendants filed a motion to withdraw, which the Court granted on March 1, 2021, after giving the Appearing Defendants an opportunity to

respond. (*See* Mot. to Withdraw, ECF No. 249; 2/10/2021 Order, ECF No. 250; 3/1/2021 Order, ECF No. 252.) The March 1, 2021 Order gave the Appearing Defendants thirty days to secure new counsel and directed Plaintiff to seek a Certificate of Default with respect to Defendant 0113 Food Corp. if it did not appear by counsel within that time. (3/1/2021 Order.) The Court also scheduled a telephone conference and warned Defendants Giovanni Marte, Gustavo Marte and Jose Marte that failure to appear may result in the imposition of sanctions, up to and including entry of a default judgment against them. (*Id*.)

On April 22, 2021, Plaintiff secured a Certificate of Default against Defendant 0113 Food Corp. (4/22/2021 Certificate of Default, ECF No. 257.) On April 22, 2021, Defendants Giovanni Marte, Gustavo Marte, and Jose Marte failed to appear for the scheduled telephone conference. (*See* 4/27/2021 Order, ECF No. 259.) On May 17, 2021, Plaintiff withdrew his prior partial motion for default judgment and on May 18, 2021 filed the instant motion for default judgment against all Defendants. (Not., ECF No. 260; 5/18/2021 Mot. for Default J., ECF No. 262.) Plaintiff served copies of his motion papers on May 20, 2021. (*See* Certificate of Service, ECF No. 267.) Defendants' response was due no later than June 1, 2021 (*see* 4/27/2021 Order), but as of the date of this Order and Report and Recommendation, no response has been filed.

## DISCUSSION

### I.    Legal Standard For Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment against a defendant that fails to appear in an action. *See Vermont Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir. 2004) ("Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of

litigation."). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).

Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on the plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)."[4] *Mickalis*, 645 F.3d at 128.

## II.   <u>Entry Of Default</u>

"A default judgment is ordinarily justified where a defendant fails to respond to the complaint." *S.E.C. v. Anticevic*, No. 05-CV-06991 (KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009); *see also Zokirzoda v. Acri Cafe Inc.*, No. 18-CV-11630 (JPO), 2020 WL 359908, at *1 (S.D.N.Y. Jan. 22, 2020) ("By failing to answer the complaint, Defendants have conceded Plaintiffs' well-pleaded factual allegations establishing liability."). In accordance with Rule 55(a), the Clerk of Court entered Certificates of Default against the Non-Appearing Defendants, which have never

---

[4] "Rule 54(c) provides that '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.'" *Mickalis*, 645 F.3d at128 n.16 (quoting Fed. R. Civ. P. 54(c)).

appeared in this action and have not responded to any pleading. (Certificates of Default, ECF Nos. 177 to 188.)

With respect to the Appearing Defendants, who did respond to the Second Amended Complaint (*see* Answer), the Clerk of Court also entered a Certificate of Default against Defendant 0113 Food Corp. after its counsel withdrew and it failed to appear by new counsel. (4/22/2021 Certificate of Default.) It is well settled that a corporate defendant's failure to obtain counsel is failure to "otherwise defend" under Rule 55(a). *See, e.g.*, *McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *15 (E.D.N.Y. Apr. 2, 2020); *see also Carlone v. Lion & the Bull Films, Inc.*, 861 F. Supp. 2d 312, 318 (S.D.N.Y. 2012) (a corporation may not appear *pro se*, but must retain counsel to avoid default) (citing *Rowland v. California Men's Colony,* 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.")).

As for Appearing Defendants Giovanni Marte, Jose Marte and Gustavo Marte (together, the "Marte Defendants"), the Court "possesses the inherent power to enter a default" against a defendant that has failed to "otherwise defend." *See Mickalis*, 645 F.3d at 128-29 ("To be sure, the typical Rule 55 case is one in which a default has entered because a defendant failed to file a timely answer . . . [n]onetheless, a district court is also empowered to enter a default against a defendant that has failed . . . to otherwise defend.") (internal citations, quotation marks and alterations omitted). Here, after reaching a settlement in principle, the Marte Defendants never executed the settlement agreement and failed to respond to numerous attempts over at least three months by their then-counsel to contact them. (*See* Mot. to Withdraw, ¶¶ 10-11.) In addition, the Marte Defendants failed to retain new counsel; failed to appear for a duly noticed

telephone conference with the Court, despite a warning that failure to do so may result in the imposition of sanctions up to an including the entry of a default judgment against them (*see* 4/9/2021 Order, ECF No. 254.), and failed to respond to the instant motion for a default judgment, despite notice and an opportunity to do so. (*See* 4/22/2021 Cert. of Service.) Accordingly, I find that the Marte Defendants have failed to "otherwise defend" this action and that entry of a default is appropriate.

The Court now turns to the next question, which is whether Defendants conduct is sufficient to warrant default judgment.

### III.   Default Judgment

"A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Id.* (citing *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir. 2011)); *see also Vermont Teddy Bear Co.,* 373 F.3d at 246) ("[A] default is an admission of all well-pleaded allegations against the defaulting party."). In other words, a party's default is almost universally deemed an admission of the plaintiff's well-pleaded allegations of fact pertaining to liability. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and internal quotation marks omitted); *see also* 10A Charles Alan Wright & Arthur R.

Miller, *Federal Practice & Procedure* § 2688.1 (4th ed. 2021) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.") (footnotes omitted).

Plaintiff seeks a default judgment on seven causes of action: (1) violation of the minimum-wage provisions of the FLSA; (2) violation of the overtime provisions of the FLSA; (3) violation of the New York Minimum Wage Act (NYLL § 650, *et seq.*); (4) violation of the overtime provisions of the NYLL;[5] (5) violation of the wage notice and recordkeeping requirements of the NYLL; (6) violation of the wage statement provisions of the NYLL; and (7) unlawful recovery of equipment costs. (*See* SAC ¶¶ 84-112.) The Court addresses these claims below.[6]

**A.   Minimum Wage And Overtime Claims**

Under the FLSA, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (footnote omitted) (citing 29 U.S.C. § 207(a)). In addition, nonexempt employees must be paid a

---

[5] Although the NYLL does not include specific provisions governing overtime compensation, New York has codified its overtime requirements in the Codes, Rules and Regulations of the State of New York. *See Infantino v. Sealand Contractors Corp.*, No. 20-CV-06782 (MWP), 2021 WL 1881796, at *16 (W.D.N.Y. May 11, 2021) (citing N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.2 (2021)); *see also Robles v. Copstat Sec., Inc.*, No. 08-CV-09572 (SAS), 2009 WL 1867948, *2 (S.D.N.Y. 2009).

[6] These claims are addressed with respect to liability against the Non-Appearing Defendants, which employed Plaintiff during the period for which he seeks damages in this case, *i.e.*, February 2015 through June 23, 2018. The liability of the Appearing Defendants, which acquired the supermarket where Plaintiff worked in or about June 2018 (*see* SAC ¶ 32), is based upon successor liability, which is addressed separately below.

minimum wage. *See* 29 U.S.C. § 206(a). New York law also requires employers to pay a minimum hourly wage to employees, as well as overtime compensation. *See* N.Y. Lab. Law § 650 *et seq*.; 12 NYCRR § 142-2.2. "To state an FLSA minimum wage or overtime claim, a plaintiff must allege that [he] was the defendant's employee, that [his] work involved interstate activity, and that [he] worked hours for which [he] did not receive minimum or overtime wages." *Zokirzoda v. Acri Cafe Inc.,* No. 18-CV-11630 (JPO), 2020 WL 359908, at *2 (S.D.N.Y. Jan. 22, 2020). "The analysis is the same for NYLL wage-and-hour claims, except that plaintiffs need not show a nexus with interstate commerce or a minimum amount of annual sales." *Id.*

### 1.  Plaintiff Was Employed by The Non-Appearing Defendants

The Court finds that Pareja's allegations are sufficient to establish that he was employed by the Non-Appearing Defendants. The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). "An employee may simultaneously have multiple 'employers' for purposes of determining responsibility under the FLSA." *De La Cruz Casarrubias v. Surf Ave. Wine & Liquor Inc.*, No. 20-CV-03003 (AMD) (RLM), 2021 WL 2227977, at *4 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021); *see also Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003) (collecting cases that permit claims against joint employers under FLSA). The same is true for the NYLL. *See id*. at *5 (citing *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013) ("Courts use the same tests to determine joint employment under both the NYLL and the FLSA.")).

"To determine whether a defendant employed an FLSA plaintiff, courts look to the 'economic reality' of a working relationship." *Zokirzoda*, 2020 WL 359908, at *2 (citing *Irizarry v.*

*Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013)). "Four factors give form to this standard: whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citation and internal quotation marks omitted); *see also Perez v. Rossy's Bakery & Coffee Shop, Inc.*, No. 19-CV-08683 (SLC), 2021 WL 1199414, at *7 (S.D.N.Y. Mar. 30, 2021) (applying same factors to individual defendants).

Plaintiff worked in the Non-Appearing Defendants' supermarkets as a fruit stocker. (SAC ¶¶ 7, 48, 50; Pareja Aff., ECF No. 263-29, ¶ 9.) Plaintiff alleges that the Non-Appearing Defendants controlled the terms and conditions of his employment, determined the rate and method of his compensation and retained the power to hire and fire him. (SAC ¶¶ 26-31, 45; Pareja Aff. ¶ 6.) Thus, I find that Plaintiff adequately alleged that he was employed by the Non-Appearing Defendants for purposes of the FLSA.

Plaintiff also adequately has alleged that he was employed by the Non-Appearing Defendants for purposes of the NYLL. "To establish employment for NYLL purposes, courts look to the degree of control exercised by the purported employer, as opposed to the economic reality of the situation." *Zokirzoda*, 2020 WL 359908, at *3 (citation and internal quotation marks omitted). In assessing degree of control, "courts consider 'whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule.'" *Dong Yuan v. Hair Lounge Inc.*, No. 18-CV-011905 (AT), 2021 WL 431442, at *4 (S.D.N.Y. Feb. 8, 2021) (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003)). Moreover, "[t]here is general support for giving FLSA and

the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." *Perez*, 2021 WL 1199414, at *7 (citation omitted). In addition to the allegations discussed above, Plaintiff alleges that his duties required neither discretion nor independent judgment. (SAC ¶ 52; Pareja Aff. ¶ 10.) Accordingly, I find that Plaintiff was employed by the Non-Appearing Defendants under the NYLL.

Because I find that the Non-Appearing Defendants are all employers under FLSA and the NYLL, they are jointly and severally liable for any judgment resulting from Plaintiff's claims. *See Perez*, 2021 WL 1199414, at *7.

### 2.     Plaintiff's Work Involved Interstate Activity

An employee is covered by the FLSA if he is employed in an enterprise "engaged in [interstate] commerce or in the production of goods for [interstate] commerce . . . ." 29 U.S.C. §§ 206(a), 207(a)(1). The enterprise must also have at least $500,000 in annual gross sales. 29 U.S.C. § 203(s)(1)(A)(ii). Plaintiff alleges that his work responsibilities involved handling goods that travelled in interstate commerce, such as fruit, foods and other supplies produced outside of New York, and that C-Town and Bravo Supermarket did a level of business such that it had annual sales of at least $500,000. (SAC ¶¶ 46-47, 51; Pareja Aff. ¶¶ 11-12.) Accordingly, I find that the Complaint sufficiently alleges that his work involved interstate activity such that he is covered by the FLSA.

### 3.     Plaintiff Adequately Alleges That He Worked Hours For Which He Did Not Receive Minimum And/Or Overtime Wages

Plaintiff alleges that he did not receive minimum or overtime wages. (SAC ¶¶ 68-71.) "To state a FLSA minimum wage claim, it is sufficient for a plaintiff to allege facts about [his] salary

and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period." *Zokirzoda*, 2020 WL 359908, at *2. "Similarly, to state a FLSA overtime claim, a plaintiff must allege only that [he] worked longer than forty hours of compensable time in a workweek, and that [he] was not properly compensated for that overtime." *Id*. (citing *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F3d 192, 201 (2d Cir. 2013) ("To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.")). The same standards apply to claims under the NYLL. *See e.g., Perez*, 2021 WL 1199414, at *7.

An employee seeking to recover unpaid wages has the burden of proving that he performed work for which he was not properly compensated. *See Angamarca v. Pita Grill 7 Inc*., No. 11-CV-07777 (JGK) (JLC), 2012 WL 3578781, at *3 (S.D.N.Y. Aug. 2, 2012). An employer is required to maintain "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c); *see also* 12 NYCRR § 146-2.1. Absent such documentation, an employee may establish his right by relying on his recollection alone and an affidavit or declaration that sets forth the number of hours worked is sufficient. *See Angamarca*, 2012 WL 3578781, at *3. Once an employee has presented his evidence, an employer may then "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Angamarca*, 2012 WL 3578781, at *4 (internal citations and quotation marks omitted). "If the employer fails to do so, the court may enter judgment in the employee's favor[.]" *Id.* (internal citations and quotation marks omitted).

Plaintiff alleges that, from approximately February 2015 until on or about February 2017, he worked from approximately 7:00 a.m. until on or about 5:00 p.m. to 6:00 p.m., four days a week, and from approximately 4:00 a.m. until on or about 5:00 p.m. to 6:00 p.m., two days a week, typically for a total of between sixty-six and seventy-two hours per week. (SAC ¶ 54; Pareja Aff. ¶¶ 13-14, 20.) During this time, Plaintiff alleges that he was paid $550 per week regardless of how many hours he worked. (Pareja Aff. ¶ 17, 19.) Plaintiff further alleges that, from February 2017 until on or about June 23, 2018, he worked from approximately 7:00 a.m. until on or about 3:00 p.m. or 4:00 p.m. six days a week, typically for a total of between forty-eight and fifty-four hours per week. (SAC ¶ 55; Pareja Aff. ¶¶ 13, 15, 19-20.) During this time, Plaintiff alleges that he was paid $600 per week regardless of how many hours he worked. (Pareja Aff. ¶¶ 18-19.) Plaintiff also asserts that he typically worked more than ten hours per day, but that his pay did not vary no matter how many hours he worked. (SAC ¶¶ 57-60; Pareja Aff. ¶¶ 14-15, 17-19.)

Where an employee receives a straight weekly salary, there is a rebuttable presumption under the FLSA that their salary covers forty hours worked. *See Cabrera v. New York Fresh Meat Inc.*, No. 15-CV-01325 (GBD) (SDA), 2018 WL 3300647, at *6 (S.D.N.Y. Mar. 29, 2018), *report and recommendation adopted*, 2018 WL 2192187 (S.D.N.Y. May 14, 2018). Similarly, under the NYLL, courts calculate the regular rate for an employee in the hospitality industry who is not paid on an hourly basis "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by the employee during the work week." 12 NYCRR § 146-3.5(b).[7]

---

[7] In a supplemental memorandum of law requested by the Court, Plaintiff argues that the New York Hospitality Wage Order applies because Defendants' supermarkets fall under the broad definition of "restaurant." (Pl.'s Supp. Mem., ECF No. 269.) The regulations define "restaurant" as: "any eating or

Thus, for the time period between February 2015 and February 2017, the Court presumes that Plaintiff was paid $13.75 per hour (*i.e.*, $550 per week divided by 40) and that for the time period February 2017 through June 23, 2018, Plaintiff was paid $15.00 per hour (*i.e.*, $600 per week divided by 40). Accordingly, Plaintiff was paid above the minimum wage and does not state a minimum wage claim under the FLSA or the NYLL.[8] However, on the assumption that an employee's weekly salary is intended to cover only forty hours per week, any time worked in excess of forty hours represents uncompensated overtime. *Rosendo v. Everbrighten Inc.*, No. 13-CV-07256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (S.D.N.Y. July 28, 2015). Thus, because Plaintiff alleges that he regularly worked over forty hours per week, he adequately alleges that he was not paid overtime.

Plaintiff also seeks spread of hours pay under the NYLL. "[T]he NYLL entitles an employee to 'one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required' for any day 'in which the spread of hours exceeds 10 hours,' 12 NYCRR § 142-2.4(a), with the 'spread of hours' referring to 'the interval between the beginning and end of an employee's workday . . . .'" *Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 497 (S.D.N.Y. 2016) (quoting 12 NYCRR § 142-2.18). Although employees who earn more than the

---

drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as . . . curb service or counter service to the public, to employees, or to members or guests of members . . . ." 12 NYCRR § 146-3.1(b). Although it is a close question, the Court finds that Plaintiff adequately has alleged that Defendants' supermarkets fall within this broad definition. *Cf. Lapko v. Grand Mkt. Int'l Corp.*, No. 514403/2019, 2020 WL 4818702, at *5 (N.Y. Sup. Ct. Kings Cnty. Aug. 12, 2020).

[8] In any event, as further set forth below, Plaintiff's damages calculations do not include damages based on minimum wage. (*See* Damages Chart, ECF No. 264-1.)

16

minimum wage rate are generally not entitled to spread-of-hours pay, *see*, *e.g.*, *Alonso v. New Day Top Trading, Inc.*, No. 18-CV-04745 (PAE) (DF), 2020 WL 9815184, at *10 (S.D.N.Y. June 29, 2020), under NYCRR § 146-1.6(d), "all employees in restaurant and all-year hotels" are entitled to spread-of-hours pay regardless of their regular pay rate. *See Elisama v. Ghzali Gourmet Deli, Inc.*, No. 14-CV-08333 (PGG) (DF), 2016 WL 11523365, at *11 (S.D.N.Y. Nov. 7, 2016), *report and recommendation adopted*, 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018).

**B.**     **Wage Statement And Wage Notice Claims**

The NYLL requires that an employer provide its employees "in writing in English and in the language identified by each employee as [their] primary language," a notice that includes, *inter alia*, an employee's regular hourly rate and overtime rate of pay. N.Y. Lab. Law § 195(1)(a). In addition, the NYLL requires employers to "furnish each employee with a statement with every payment of wages" that includes, *inter alia*, the rate of payment, the gross wages provided, and the applicable overtime rate. *Id.* § 195(3). Plaintiff asserts that Defendants failed to provide him with such statement or notice. (Compl. ¶¶ 64-66.) Accordingly, the Court finds Defendants liable under the NYLL §§ 195(1), 195(3).

**C.**     **Equipment Costs Claim**

Finally, Plaintiff seeks default judgment on his claim for recovery of equipment costs. (SAC ¶ 111.) "Pursuant to the implementing regulations of the FLSA, 'if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA].'" *De Jesus*

*v. P&N Cuisine Inc.*, No. 20-CV-03619 (RA), 2021 WL 2380065, at *3 (S.D.N.Y. June 10, 2021) (quoting 29 C.F.R. § 531.35). "In other words, employers can require employees to bear the costs of acquiring and maintaining tools of the trade so long as those costs, when deducted from the employees' weekly wages, do not reduce their wage to below the required minimum." *Id.* (citation omitted). "Similarly, under the NYLL, if an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage." *Id.* (citations, quotation marks and alterations omitted); *see also* 12 NYCRR § 146-2.7(c)).

Here, Plaintiff alleges that he was required to purchase tools of the trade with his own funds, including three pairs of work boots, totaling $120. (SAC ¶ 67; Pareja Aff. ¶24; Faillace Aff. ¶ 85, ECF No. 263.) However, Plaintiff has not shown that these costs reduced his wage below the required minimum wage and, therefore, does not state a claim for recovery of equipment costs.

### D.   Successor Liability Claims Against The Appearing Defendants

The claims against the Appearing Defendants are based upon a theory of successor liability, since the Appearing Defendants acquired the supermarket where Plaintiff worked in June 2018, around the time that Plaintiff's employment at the supermarket ceased. (*See* SAC ¶¶ 32-33, 49.) Plaintiff alleges that the Appearing Defendants essentially continued the existing supermarket business as had existed under the Non-Appearing Defendants, which were the prior owners. (*See id.* ¶ 33.)

Courts in this district have applied the "substantial continuity" test used in other labor and employment law contexts to cases brought under the FLSA. *See Battino v. Cornelia Fifth Ave.,*

*LLC*, 861 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (Oetken, J.). "The substantial continuity test in the labor relations context looks to 'whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.'" *Id*. at 404 (citing *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 43 (1987)). Applying the relevant factors under the substantial continuity test,[9] the Court finds that Plaintiff's well-pleaded allegations establish successor liability against the Appearing Defendants.

E.    **Additional Factors Supporting Default Judgment**

As set forth above, the Court finds that Plaintiff's well-pleaded allegations are sufficient to establish Defendants' liability on Plaintiff's claims. However, courts in this Circuit also consider "three additional factors in determining whether default judgment is warranted under Rule 55, namely: (1) 'whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *United States v. Thomas*, No. 18-CV-01104 (PKC) (LB), 2019 WL 121678, at *4 (E.D.N.Y. Jan. 7, 2019) (citation

---

[9] These factors are:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Battino*, 861 F. Supp. 2d at 404 (citation omitted). "No one factor is controlling, and it is not necessary that each factor be met to find successor liability." *Id*. (citation omitted). Although on the record before the Court it is not apparent that the Appearing Defendants had notice of this lawsuit prior to acquiring the supermarket where Plaintiff worked, the other factors all favor a finding of liability.

omitted); *see also Gogo Apparel, Inc. v. Daruk Imps., Inc.*, No. 19-CV-05701 (LGS) (SDA), 2020 WL

4274793, at *3 (S.D.N.Y. June 11, 2020), *report and recommendation adopted*, 2020 WL 4271694

(S.D.N.Y. July 23, 2020) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).

Considering these factors, the Court finds that they weigh in favor of entry of default

judgment. First, Defendants' default was willful. The Non-Appearing Defendants, despite being

properly served, failed to respond to any pleading or to Plaintiff's motion for a default judgment,

or otherwise appear in the action. Accordingly, the Court finds the Non-Appearing Defendants'

default to be willful. *See Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260,

266 (E.D.N.Y. 2019) ("A default is considered willful where the defendant fails to answer a

complaint without explanation or justification.") (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39

(2d Cir. 1998)). As for the Appearing Defendants, they have not communicated with the Court

since before the settlement was reached and, after walking away from the settlement, "appear

to be willfully ignoring the matter presently before the Court." *See Buttnugget Publ'g v. Radio

Lake Placid, Inc.,* 807 F. Supp. 2d 100, 106 (N.D.N.Y. 2011) (finding same factors weighed in favor

of default judgment).

Second, the Court is unaware of any meritorious defenses Defendants could assert with

respect to the claims at issue. Third, Plaintiff would be prejudiced if the motion for default were

denied, "as there are no additional steps available to secure relief in this Court." *Gogo Apparel,

Inc.*, 2020 WL 4274793, at *4 (citing cases). Thus, all three factors permit entry of default

judgment against Defendants.

III.    **Damages**[10]

Plaintiff bears the burden of establishing his entitlement to recovery and thus must substantiate his claims with evidence to prove the extent of his damages. *See*, *e.g.*, *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158-59 (2d Cir. 1992).

A.    **Statutes Of Limitations**

Plaintiff asserts claims under both the NYLL and the FLSA. (SAC ¶¶ 84-112.) The statute of limitations under the NYLL is six years and under the FLSA is two years (or three years if an employer acted willfully). *See* NYLL § 663(3); 29 U.S.C. § 255(a). Plaintiff may not recover under both the NYLL and the FLSA for the same injury, but he is entitled to recover damages under the statute that provides him the greatest relief. *See Angamarca*, 2012 WL 3578781, at *4. Here, the NYLL six-year statute of limitations provides Plaintiff the greatest relief. Since the start date of Plaintiff's employment, *i.e.*, February 1, 2015, falls within the NYLL six-year statute of limitations, his damages will be calculated beginning as of that date.

B.    **Unpaid Wages And Spread Of Hours Pay**

Plaintiff submitted to the Court a chart that reflects the amounts of minimum and overtime wages, as well as spread of hours pay, that Plaintiff contends are due to him.[11] (*See* Damages Chart.) Because Defendants have defaulted, the Court credits Plaintiff's

---

[10] Although the Court may hold a hearing to assess damages, a hearing is not required when a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2); *see also Bricklayers*, 779 F.3d at 189. Indeed, the Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young, Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (citation omitted). Here, I rely on Plaintiff's Affidavit, which I find contains the required evidentiary basis to determine Plaintiff's damages.

[11] At the Court's request, Plaintiff's counsel also provided the Court with a native Excel version of the spreadsheet.

representations as to the dates and hours he worked. *See Angamarca*, 2012 WL 3578781, at *4 (upon default, court may use plaintiff's "recollection to determine damages, even though the result be only approximate."). The Court finds the calculations set forth in Plaintiff's spreadsheet with respect to overtime wages and spread of hours pay to be sound.[12] Thus, Plaintiff is entitled to the sum of $73,940.63 in overtime wages and $5,671.50 in spread of hours pay, for a total of $79,612.13.

### C.   Wage Notice And Statement Violations

Plaintiff seeks to recover damages for the Non-Appearing Defendants' failure to provide regular wage statements and annual wage notices as required by NYLL §§ 195(1), 195(3). Since Plaintiff did not receive wages notices or statements, he is entitled to statutory damages in the maximum amount of $5,000.00 under each section, for a total of $10,000.00. *See Cabrera*, 2018 WL 3300647, at *7-8.

### D.   Liquidated Damages

Although Plaintiff asserts that he would be entitled to liquidated damages under both the FLSA and the NYLL, he only seeks liquidated damages under one statute.[13] (*See* Damages Chart.) Because the NYLL provides a greater amount of recovery for the overtime violations, the Court recommends awarding liquidated damages pursuant to the NYLL only. *Accord Toramall v.*

---

[12] Plaintiff calculates overtime wages due for each relevant period by (i) multiplying his regular rate for that period by 1.5 to arrive at the regular overtime rate; (ii) multiplying the resulting rate by the number of hours in excess of forty hours that Plaintiff worked per week during that period; and (iii) multiplying that weekly amount due by the number of weeks in that period. (*See* Damages Chart.)

[13] In *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. App'x 59 (2d Cir. 2016), a non-precedential panel opinion of the U.S. Court of Appeals for the Second Circuit refused to permit an award of liquidated damages under both the FLSA and the NYLL for the same violation, because it would amount to "double recovery." *Id*. at 60-61. Plaintiff is not seeking such a double recovery in this case.

*Manhattan Constr. Grp. LLC*, No. 18-CV-01062 (PGG) (GWG), 2020 WL 2763737, at *5 (S.D.N.Y. May 28, 2020), *report and recommendation adopted*, 2020 WL 6482796 (S.D.N.Y. Nov. 4, 2020) (citing, *inter alia*, *Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, 17-CV-05001 (MKB) (RML), 2018 WL 6718766, at *10 (E.D.N.Y. Nov. 7, 2018) ("When two forms of damages are available for the same violation, courts have generally awarded the higher of the two.")).

The Court finds that Plaintiff has established that the Non-Appearing Defendants' wage violations were "willful" such that he is entitled to liquidated damages under the NYLL. *See* NYLL § 198(1-a). NYLL § 663(1) provides that Plaintiff is entitled to "liquidated damages equal to one hundred percent of the total of such underpayments found to be due." NYLL § 663(1). Thus, the Court finds that Plaintiff is entitled to liquidated damages under the NYLL in the amount set forth above, *i.e.*, $79,612.13.

### E.   Pre-Judgment Interest

Plaintiff seeks pre-judgment interest on his NYLL claims for unpaid overtime and spread of hours pay. Plaintiff is entitled under New York law to pre-judgment interest at the statutory rate of 9% per annum. *See* N.Y. C.P.L.R. §§ 5001, 5004. "Pre-judgment interest applies only to the amount of compensatory damages and excludes the amount of liquidated damages." *See Angamarca*, 2012 WL 3578781, at *9. Where unpaid wages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). I recommend that pre-judgment interest be calculated by applying the statutory interest rate to the entire principal amount due under the NYLL, beginning on such an "intermediate date" and running up until and including the date judgment is entered. *See Angamarca*, 2012 WL 3578781, at *9.

Plaintiff was employed by Defendants from February 1, 2015 through June 23, 2018. The midpoint of this period is October 12, 2016. Therefore, I recommend that pre-judgment interest start to run on October 12, 2016 on the sum of $79,612.13 (*i.e.*, the amount of unpaid overtime and unpaid spread of hours payments). Pre-judgment interest should be calculated up to the date of the entry of judgment.

**F.**   **Attorneys' Fees and Costs**

Plaintiffs seek $23,412.50 in attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198(1-a), 663(1). (*See* Statement of Damages; *see also* Attorney's Fees and Costs, ECF No. 264-2.) Under the FLSA and NYLL, a prevailing party in an employment dispute is entitled to recover reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

While a district court retains discretion to determine what constitutes a reasonable fee, "this discretion is not unfettered." *Millea v. Metro-North R.R. Co*., 658 F.3d 154, 166 (2d Cir. 2011). "[W]hen a prevailing party is entitled to attorneys' fees, the district court must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Id*. "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Id*. (citations omitted). This approach is intended to "produce[] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the

hour in a comparable case[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *see also Bergerson v. New York Office of Mental Health, Central New York Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011) ("The reasonable hourly rate should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.") (internal quotation marks and citations omitted). In deciding what constitutes a reasonable rate, a court may consider "rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). "The relevant community to which the court should look is the district in which the case was brought." *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000).

In calculating the reasonable number of hours expended "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In addition, "[c]ourts regularly reduce the rate billed by attorneys for work done on administrative or clerical tasks," and "[a]ttorneys engaged in clerical tasks should be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all." *Shabazz v. City of New York*, No. 14-CV-06417 (GHW), 2015 WL 7779267, at *4 (S.D.N.Y. Dec. 2, 2015) (citation and internal quotation marks omitted).

### 1.    Reasonable Hourly Rates

Michael Faillace & Associates, P.C. represents Plaintiff. Plaintiff seeks to recover fees for work performed by six attorneys at the Faillace firm, as well as one paralegal. (Faillace Aff. ¶ 97.) Plaintiff seeks reimbursement for their work at rates between $275 to $450 for the attorneys and

$100 per hour for the paralegal. (*Id*.) Having considered all the relevant facts and circumstances, the Court finds that the attorney hourly rates are reasonable. *See Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-00461 (WHP) (JLC), 2014 WL 4207106, at *14 (S.D.N.Y. Aug. 26, 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases."). The Court also finds that the $100 hourly rate for paralegal work is reasonable. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-01906 (HBP), 2015 WL 4006896, at *8 (S.D.N.Y. July 1, 2015) ("In recent FLSA actions, hourly rates between $100 and $125 for paralegal work have been found to be reasonable.").

### 2.   Reasonable Hours Expended

Having determined that the hourly rates are reasonable, the Court next examines the hours reasonably expended. Plaintiff has submitted copies of billing statements setting forth the hours worked. (*See* Attorney's Fees and Costs, ECF No. 264-2.) Having reviewed these records, the Court finds that the hours expended were reasonable.

### 3.   Costs

Finally, Plaintiff seeks recovery of $2,756.55 in costs. (*See* Statement of Damages, ECF No. 264; Attorney's Fees and Costs.) Pursuant to the NYLL, an employee who prevails in a wage-and-hour action is entitled to recover costs. NYLL § 663(1). The Court finds that the costs sought by Plaintiff, including filing fee, process server fees, postage expenses and costs relating to a remote deposition, are reasonable.

In sum, the Court finds that Plaintiff should recover $26,169.05 in attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, it is hereby Ordered that Plaintiff's motion for a default judgment is GRANTED with respect to Defendants 0113 Food Corp., Giovanni Marte, Jose Marte, and Gustavo Marte. The Clerk of Court is respectfully requested to enter judgment in favor of the Plaintiff against these defendants in the amount of $169,224.26 (consisting of $73,940.63 in unpaid overtime wages, $5,671.50 in spread of hours pay, $79,612.13 in liquidated damages and $10,000.00 for wage notice and statement violations). It is further Ordered as follows: (1) pre-judgment interest shall be awarded at the rate of 9% per annum on the sum of $79,612.13 from October 12, 2016 until the date of entry of judgment; and (2) Plaintiff shall be awarded $26,169.05 in attorneys' fees and costs.

With respect to Defendants 184 Food Corp., 231 Food Corp., DG 231 Food Corp., 640 Pelham Food Corp., G&G Pelham Food Corp., Rafael Montes Deoca, Rafael Montes Deoca Jr. and Gregory Gonzalez, I respectfully recommend that Plaintiff's motion for a default judgment be GRANTED and that judgment be entered against them in the sum of $169,224.26. I further recommend that pre-judgment interest be awarded at the rate of 9% per annum on the sum of $79,612.13 from October 12, 2016 until the date of entry of judgment; and that Plaintiff shall be awarded $26,169.05 in attorneys' fees and costs.[14]

---

[14] Because, as set forth below, the Non-Appearing Defendants will have time to file objections to my recommendations, and Judge Oetken then must determine whether to adopt my recommendations, the date the judgment against the Non-Appearing Defendants will be entered will be later than the date that the judgment against the Appearing Defendants is entered. Thus, the amount of prejudgment interest will be greater. In addition, although the judgment against the Appearing Defendants and the judgment against the Non-Appearing Defendants will be entered separately, if Plaintiff obtains full recovery under one of the judgments, he may not obtain recovery under the other, as the liability against the Appearing Defendants and the Non-Appearing Defendants is joint and several.

No later than July 26, 2021, Plaintiff's counsel shall mail copies of this Order and Report and Recommendation to Defendants and promptly thereafter shall file proof of service on the docket.

Dated:      New York, New York
            July 22, 2021

_____
**STEWART D. AARON**
**United States Magistrate Judge**

\*               \*               \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Plaintiff and Defendants 184 Food Corp., 231 Food Corp., DG 231 Food Corp., 640 Pelham Food Corp., G&G Pelham Food Corp., Rafael Montes Deoca, Rafael Montes Deoca Jr. and Gregory Gonzalez shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Oetken.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).